

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 38th Floor*
*New York, New York 10278*

August 22, 2025

**By ECF**

The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Frank Alicea*, 25 CR 184 (AT)

Dear Judge Torres,

    The Government respectfully submits this letter in advance of the sentencing of Defendant Frank Alicea, which is scheduled to proceed on August 25, 2025 at 3:00 PM, and apologizes for its untimeliness. For the reasons set out below, the Government joins with Probation in recommending that the Court impose a sentence of 106 months' imprisonment, which lies at the bottom of the applicable range of 106 to 117 months' imprisonment pursuant to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") but which is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing, in particular, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant by incapacitating him.

## Background

    Beginning in 2021, in connection with an investigation into drug and firearms trafficking in East Harlem in Manhattan, the Federal Bureau of Investigation ("FBI") and New York City Police Department ("NYPD") directed a confidential source ("CS-1") to purchase controlled substances, including (i) cocaine base, in a form commonly referred to as "crack," (ii) cocaine, and (iii) methamphetamine; firearms; or both controlled substances and firearms from the defendant in 23 controlled transactions, the majority of which were audio and video recorded and which occurred between in or about January 2021 and February 2023. This drug and firearms investigation was conducted in conjunction with a separate but related investigation into multiple prior murders that had occurred in the same neighborhood for which the defendant was a witness, not a perpetrator. Following the conclusion of that latter investigation, on September 29, 2023, the Honorable Ona T. Wang, United States Magistrate Judge for the Southern District of New York, issued a complaint charging the defendant in four counts with distributing cocaine base on May 17, 2022, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C); using and carrying a firearm and possessing a firearm during and in relation to a drug trafficking crime on May 17,

2022, in violation of 18 U.S.C. § 924(c)(1)(A)(i); distributing cocaine base on February 13, 2023, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C); and using and carrying a firearm and possessing a firearm during and in relation to a drug trafficking crime on February 13, 2023, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Thereafter, on or about October 2, 2023, members of the FBI and the NYPD arrested the defendant, who was presented the following day, on or about October 3, 2023, before the Honorable Stewart D. Aaron, United States Magistrate Judge for the Southern District of New York, who ordered the defendant detained. The defendant has remained detained at all relevant times through to the present in the custody of the United States Marshals Service at the Metropolitan Detention Center in Brooklyn, New York.

On or about April 22, 2025, the defendant appeared before the Court, waived indictment and was arraigned on a two-count information (the "Information"), which charged the defendant with distributing cocaine base on May 17, 2022, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C) ("Count One"); and using and carrying a firearm and possessing a firearm during and in relation to a drug trafficking crime on May 17, 2022, in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count Two"); and entered a guilty plea to Counts One and Two of the Information.

In terms of the instant offense conduct and the criminal history of the defendants, the Government generally relies upon the description of the offense conduct and criminal history set out in the Presentence Investigation Report dated July 21, 2025 ("PSR"), which substantially draws from information that the Government supplied to Probation and to which the defendant has not objected. (*See* PSR ¶¶ 8-22). As further detailed in the PSR, between January 2021 and February 2023, the defendant participated in 23 controlled transactions with CS-1, during which the defendant sold approximately 59 grams of crack, 24 grams of cocaine, and 19 grams of methamphetamine. In addition, (i) on May 17, 2022, the defendant sold CS-1 not only a quantity of crack but also a .22-caliber revolver and 100 rounds of .22-caliber ammunition; and (ii) on February 13, 2023, the defendant sold CS-1 not only a further quantity of crack but also a nine-millimeter semi-automatic pistol. (*See* PSR ¶¶ 12-20).

## **Applicable Law**

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines are not mandatory; however, it also held that a district court must "consult" the Guidelines and "take them into account" when fashioning a sentence. *Id.* at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a court must proceed to consider seven factors outlined in 18 U.S.C. § 3553(a): (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); (ii) the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); (iii) "the kinds of sentences available," *id.* § 3553(a)(3); (iv) the Guidelines range itself, *see id.* § 3553(a)(4); (v) any relevant policy statement by the United States Sentencing Commission, *see id.* § 3553(a)(5); (vi) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (vii) "the need to provide restitution to any victims," *id.* § 3553(a)(7).

The statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, pursuant to which the sentence needs::

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* § 3553(a)(2).

While a district court may not presume that an appropriate sentence lies within the Guidelines range, "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. The relevance of the Guidelines throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349. To the extent a district court varies from a Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

## Sentence

At bottom, the defendant is a drug and firearms recidivist who sold drugs and firearms in connection with this case, for which he should be seriously punished, seriously deterred, and seriously segregated from the law-abiding members of the community in which he committed not only the instant offense conduct but also the majority of the drug and firearms crimes for which he has previously been convicted and sentenced to substantial prison terms in state court proceedings during the past quarter century. (*See* PSR ¶¶ 39-53). Further, the Government agrees with the analysis of Probation that the defendant's alleged relationship with CS-1, a familiar and young acquaintance of the defendant, and the defendant's alleged limitations, particularly when considered in light of the defendant's sustained criminal history, are aggravating, not mitigating, circumstances that militate in favor of a relatively more substantial sentence than would otherwise be required. (*See* PSR 27-28). For almost the entirety of his adult life, the defendant has made repeated choices to offend through drug and firearms offenses for which he is now again facing judgment, and the Government, together with Probation, accordingly asks the Court to impose a judgment that honors the choices of both the defendant as well as all those many thousands and thousands of residents of East Harlem who have made different and better choices in their law-abiding lives.

## Conclusion

For the reasons set out above, the Government respectfully joins with Probation in recommending that the Court impose a sentence of 106 months' imprisonment and three years' supervised release, to be comprised of 46 months' imprisonment on Count 1 of the Information and 60 months' imprisonment, to be served consecutively as a matter of law, on Count 2 of the Information and three years' supervised on Counts 1 and 2 of the Information, to be served concurrently as a matter of law.  In addition, as stipulated in the plea agreement between the parties, the Government respectfully requests that the Court impose an order of forfeiture of $5,000, for which the Government supplies a proposed forfeiture order.

Respectfully,

JAY CLAYTON
United States Attorney

By: *Thomas John Wright*
Thomas John Wright
Assistant United States Attorney
(212) 637-2295

Enclosure

cc: Andrew Dalack (Counsel to Defendant Frank Alicea) (by ECF)